## UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

| | |
|---|---|
| Edward Allen | Case No. 15-1071 |
| Petitioner - Appellant, | |
| v. | |
| Warden Falk | **Appellant's Combined Opening Brief and Application for a Certificate of Appealability** |
| Respondent - Appellee. | |

## INSTRUCTIONS TO LITIGANTS PROCEEDING WITHOUT COUNSEL

The court will accept a completed copy of this form as a combined opening brief and application for a certificate of appealability. You may attach additional pages as needed. In the alternative, you may prepare your own combined opening brief and application for a certificate of appealability.

Your combined opening brief and application for a certificate of appealability must include all the arguments you intend to make on appeal. Citations to legal authorities (cases, statutes, etc.) are encouraged but not required. The purpose of an appeal is to determine if the district court erred in its decision-making based on the arguments, pleadings, and evidence that were submitted to that court. This court generally does not consider new evidence and will base its decision on the existing district court record. **Because you are proceeding without an attorney, the record of proceedings from the district court has been or will be transmitted to this court from the district court where your case was heard. You are not required to attach district court documents to your combined opening brief and application for a certificate of appealability.**

If the district court did not issue an order granting a certificate of appealability on an issue or issues you wish to raise with this court on appeal, you must show you are entitled to a certificate of appealability. To do so, you must make a "substantial showing of the denial of a constitutional right." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). This generally requires a "showing that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

**Opening Brief and Application for a Certificate of Appealability**          **page 1**

ORIGINAL

Regardless of the form used, the combined opening brief and application for a certificate of appealability cannot exceed 30 pages in length unless you certify that it contains no more than 14,000 words. If the total number of pages you submit exceeds 30, you must count the number of words in the document and certify that word count. The form for providing certification is on the last page of this document. If the combined opening brief and application for a certificate of appealability is over 30 pages in length and the word count has not been certified, or if the word count exceeds 14,000, your combined opening brief and application for a certificate of appealability will not be filed and your appeal is subject to dismissal.

Whether you use this form or your own for your combined opening brief and application for a certificate of appealability, you must send a copy of the document to this court by placing it in the mail on or before the due date. If the document is being mailed using a prison mail system, you must affirm under the penalty for perjury the date the document was placed, first class postage prepaid, in the prison mail system. *See* Fed. R. App. P. 25(a)(2)(C). One copy of the combined opening brief and application for a certificate of appealability to this court is sufficient. You must also mail a copy of the document to the attorney representing the appellee (the respondent or government in the district court proceedings).

On the last page of this form, you will find two subsections that must be filled out and signed. We advise you to complete that page and attach it to the end of your own combined opening brief and application for a certificate of appealability if you elect not to use this form.

The appellee is not obligated to respond to your combined brief and application for a certificate of appealability. 10th Cir. R. 22.1(B). **It is not a default or concession in any way if the appellee does not respond.** If the appellee does respond, or is ordered to, you may file a reply brief. Otherwise, your combined opening brief and application for a certificate of appealability is the only brief the court will consider.

**The court disfavors motions for extensions of time to file briefs. 10th Cir. R. 27.4(A). If you must file a motion asking for an extension of time, file it well in advance of the due date. If the court grants you an extension of time to file your combined brief and application for a certificate of appealability and the order designates the extension as final, you risk your appeal being dismissed for failure to prosecute if you nevertheless ask for additional time again.**

**Unless the district court granted you leave to proceed on appeal *in forma pauperis*, you were directed by this court to either pay the filing fee for this appeal or alternatively, to file a motion with this court asking leave to proceed *in forma pauperis*. You must also comply fully with those directives before the court will consider your appeal.**

ORIGINAL

## APPELLANT'S COMBINED OPENING BRIEF
## AND APPLICATION FOR A CERTIFICATE OF APPEALABILITY

**1. Statement of the Case.** This case is about conditions of confinement. The plaintiff originally was accused of a sex-offense in the state of Colorado. The plaintiff is incarcerated for a sex-offense-enhancement. The plaintiff maintains that he is innocent of any sex-offense. The sex-offender-management-board has determined that the plaintiff must confess to the sex-offense in order to gain treatment. The plaintiff has a fifth Amendment right to not to confess to a crime he will most likely be tried for. The plaintiff will most likely be tried again for the same crime. That is the crime in witch C.D.O.C. employees want The plaintiff n to confess to. This issue was not addressed. There are three different action taken by CDOC, parole-board, and sex-offender-treatment because the plaintiff will not confess. See Amended Prisoner Complaint section C. NATURE OF THE CASE.

Claim 1The parole-board requires treatment for parole to be obtained. The plaintiff is denied parole, and forced to serve a life sentence because he has not undergone treatment.18 U.S.C.S. § 3582(a) instructs courts to recognize that imprisonment is not an appropriate means of promoting correction and rehabilitation. Tapia v. United States, 131 S. Ct. 2382 (2011)

Claim2 the plaintiff is denied treatment because he will not confess. The district court has determined treatment is necessary. See Beebe v. Heil, 333 F. Supp. 2d 1011, 1017 (D. Colo. 2004).

Claim 3 The defendants have placed the plaintiff with violent predatory prisoners, and forced him to defend himself form predatory prisoners because he will not confess to the sex-offense for the enhancement he was sentenced for. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious damage to his future health, and it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk. Farmer v. Brennan, 511 U.S. 825 (1994)

Claim 3 is the only claim for damages, and it also asks for injunctive relief.

Claim 1, and 2 only ask for injunctive and declaratory relief. The plaintiff criminal case is under review

**2 . Prior proceedings**.

(a) Claim 1 plaintiff was denied the grievance process by CDOC employees, and was informed that he must take this issue to court. On June 9, 2014, Magistrate Judge Boyd N. Boland reviewed the Complaint and determined that it was deficient because the allegations failed to comply with Rule 8 of the Federal Rules of Civil Procedure and did not allege the personal participation of each named Defendant in a deprivation of Plaintiff's constitutional rights. Therefore directed Mr. Allen to file an amended complaint within thirty days. . Plaintiff filed his Amended Complaint on July 11, 2014. (ECF No. 12).Plaintiff originally named in the amended complaint Governor Hickenlooper, Rick Raemisch, the entire parole board, Denise Balazic, Joe Morales,



Brandon Shaffer as Defendants. Magistrate Judge Boyd N. Boland reviewed the amended Complaint and dismissed the claim. Plaintiff, Edward Allen, aka Edward Clutts, filed pro se a "Petition for Rehearing" (ECF No. 15) on August 28, 2014 is GRANTED, in part, and is otherwise DENIED Order of Dismissal (ECF No. 13) entered in this action on August 12, 2014, is VACATED as to Plaintiff's Eighth Amendment claim against Defendant Warden Designee of Sterling Correctional Facility (claim three of the Amended Complaint (ECF No. 12, at 9)). The Order of Dismissal otherwise remains in effect.

    (b) Claim2 plaintiff was denied the grievance process by CDOC employees, and was informed that he must take this issue to court On June 9, 2014, Magistrate Judge Boyd N. Boland reviewed the Complaint and determined that it was deficient because the allegations failed to comply with Rule 8 of the Federal Rules of Civil Procedure and did not allege the personal participation of each named Defendant in a deprivation of Plaintiff's constitutional rights. Therefore directed Mr. Allen to file an amended complaint within thirty days. . Plaintiff originally named in the amended complaint Governor Hickenlooper, Rick Raemisch, the entire Colorado sex-offender-management-board, Maggie Leionon, Joanie Shoemaker as Defendants. Plaintiff filed his Amended Complaint on July 11, 2014. (ECF No. 12).Magistrate Judge Boyd N. Boland reviewed the amended Complaint and dismissed the claim. Plaintiff, Edward Allen, aka Edward Clutts, filed pro se a "Petition for Rehearing" (ECF No. 15) on August 28, 2014. "Petition for Rehearing" (ECF No. 15) on August 28, 2014 is GRANTED, in part, and is otherwise DENIED Order of Dismissal (ECF No. 13) entered in this action on August 12, 2014, is VACATED as to Plaintiff's Eighth Amendment claim against Defendant Warden Designee of Sterling Correctional Facility (claim three of the Amended Complaint (ECF No. 12, at 9)). The Order of Dismissal otherwise remains in effect.

    (c) Claim 3 Plaintiff filed grievances process and exhausted administrative remedies on the issue in 2008. see exhibit (O), then filed 1983 case no. Allen v. Zavaras 08-cv-02506-ZLW-BNB. In case no.08-cv-02506-ZLW-BNB the Plaintiff informed the court that he was living under the threat violence. Case dismissed claiming Zavaras had no knowledge. Allen filed a second action after he refused to move into a cell with a (STG) shot-caller because said shot-caller and subordinate threatened the plaintiff then was assaulted by guards. see Allen v. Zavaras, Civil Action No. 09-cv-02325-ZLW-BNB. The plaintiff made two more attempts to file grievances the forms were denied him stating; "this is not a grievable issue you must take this issue to court".

On June 9, 2014, Magistrate Judge Boyd N. Boland reviewed the Complaint and determined that it was deficient because the allegations failed to comply with Rule 8 of the Federal Rules of Civil Procedure and did not allege the personal participation of each named Defendant in a deprivation of Plaintiff's constitutional rights. Therefore directed Mr. Allen to file an amended complaint within thirty days. . Plaintiff originally named in the amended complaint Governor Hickenlooper, Rick Raemisch,, John W. Suthers, and Patric Sayas, Warden Falk, Warden designee as Defendants. Plaintiff filed his Amended Complaint on July 11, 2014. (ECF No. 12).Magistrate Judge Boyd N. Boland reviewed the amended Complaint and dismissed the claim. Plaintiff, Edward Allen, aka Edward

Clutts, filed pro se a "Petition for Rehearing" (ECF No. 15) on August 28, 2014 is GRANTED, in part, and is otherwise DENIED Order of Dismissal (ECF No. 13) entered in this action on August 12, 2014, is VACATED as to Plaintiff's Eighth Amendment claim against Defendant Warden Designee of Sterling Correctional Facility (claim three of the Amended Complaint (ECF No. 12, at 9)). The Order of Dismissal otherwise remains in effect. Michael J. Watanabe

United States Magistrate Judge determined that Warden Falk of Sterling Corr. Facility was the only defendant in this case. Plaintiff filed a Motion for Joinder of Parties (Docket No. 42). the Warden Designee of Sterling Correctional Facility was never allowed to be entered as a defendant. Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint (Doc. 12) or Alternatively, Motion for Summary Judgment (Docket No. 25) Defendant moves to dismiss the Amended Complaint (Docket No. 12) pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on the following grounds: (1) plaintiff failed to exhaust his administrative remedies and his claim should thus be dismissed pursuant to the Prison Litigation Reform Act ("PLRA"), (2) his claim is largely time-barred, (3) Falk is entitled to Eleventh Amendment immunity, (4) plaintiff fails to allege personal participation on behalf of Falk, (5) plaintiff fails to state an Eighth Amendment claim; (6) Falk is entitled to qualified immunity, and (7) plaintiff fails to state a claim for damages. The only argument alternatively brought pursuant to Fed. R. Civ. P. 56 is number 1, the non-exhaustion argument. RECOMMENDED that Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 12) or Alternatively, Motion for Summary Judgment (Docket No. 25) be granted. It is further RECOMMENDED that Plaintiff's Second Motion Persent [Sic] Frcp [Sic] 65 (Docket No. 27) be denied. It is further RECOMMENDED that Plaintiff's [*30] Motion for Joinder of Parties (Docket No. 42) be denied. Accordingly, it is ORDERED that the Recommendation of the United States Magistrate Judge [ECF No. 45] is AFFIRMED, and it is ADOPTED. It is further ORDERED that Defendant's Motion to Dismiss Plaintiff's Amended Complaint or Alternatively, Motion for Summary Judgment [ECF No. 25] is GRANTED; Plaintiff's Second Motion Persent [sic] FRCP 65 [ECF No. 27] is DENIED; and Plaintiff's Motion for Joinder [*6] of Parties [ECF No. 42] is DENIED. The plaintiff filed a second petition for rehearing dated January 27, 2015. It was denied without an opinion.

**3. Statement of Facts Relevant to the Issues Presented for Review.** The plaintiff was recommended to sex-offender-treatment by case-manager Jones in the year 2004 he also informed the plaintiff that they will move him to a place where "things could be done" if the plaintiff did not cooperate with sex-offender-treatment. Sex-offender-treatment requires that the plaintiff confesses to a crime to witch the plaintiff has no knowledge.

"The failure of an offender to acknowledge his guilt within an appropriate period of time is grounds for termination of sex offender treatment and the corresponding sanction that accompanies such non-performance of a term of probation".Schumacher v. Ortiz 07-cv-01348-MSK-CBS n.6 (2010)

If he confesses that he committed this offense for treatment purposes, then that would impact his efforts to get habeas corpus relief or post-conviction-relief. If he does not admit the facts of his sexual criminal conviction, he cannot gain conditional release. See Strutton

ORIGINAL

v. Meade, 2010 U.S. Dist. LEXIS 31944 Case No. 4:05CV02022 ERWUNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION (2010)

Claim 1. Plaintiff was charged with sexual assault on a child by one in a position of trust, as part of a pattern of abuse. A class 3 felony. Plaintiff was sentenced to 10 years to life imprisonment with discretion given to parole-board for release on parole. The plaintiff has been incarcerated sense May 14,2004. The plaintiff is now serving a life sentence. Justice J. Marshal made it clear that she could not order the plaintiff to undergo treatment. See case number 03 CR 159 count 1, and 2,and case number 03 CR 253. C.R.S. 18-1.3-401 States; Class 3 felony requires Four to Twelve years imprisonment Five years parole. C.R.S. 18-1.3-406(b) States; Notwithstanding the provisions of paragraph (a) of this subsection (1), any person convicted of a sex offense, as defined in section 18-1.3-1003(5), committed on or after November 1, 1998, that constitutes a crime of violence shall be sentenced to the department of corrections for an indeterminate term of incarceration of at least the midpoint in the presumptive range specified in section 18-1.3-401 (1) (a) (V) (A) up to a maximum of the person's natural life, as provided in section 18-1.3-1004 (1). The Colorado Sex Offender Lifetime Supervision Act, Colo. Rev. Stat. § 18-1.3-1001 et seq., creates a liberty interest in treatment because it both mandates treatment and conditions parole on progressing successfully through treatment. Colo. Rev. Stat. §§ 18-1.3-1004(3), 16-11.7-105. See Allen v. Clements, 930 F. Supp. 2D 1252 (2013) Parole is not considered unless the prisoner has been treated by sex-offender-management-board and sex-offender-management-board will not treat a prisoner unless he confesses. The sole purpose for lifetime incarceration is to promote correction and rehabilitation.

Claim 2. sex-offender-management-board will not treat a prisoner unless he confesses to a crime. The Colorado Sex Offender Lifetime Supervision Act, Colo. Rev. Stat. § 18-1.3-1001 et seq., creates a liberty interest in treatment because it both mandates treatment and conditions parole on progressing successfully through treatment. Colo. Rev. Stat. §§ 18-1.3-1004(3), 16-11.7-105. Furthermore, unreasonably refusing to re-enroll an inmate who was terminated from treatment without due process could implicate a protected liberty interest. See Allen v. Clements, 930 F. Supp. 2D 1252 (2013)

Claim 3. The defendants have placed the plaintiff with violent predatory prisoners, and forced him to defend himself form predatory prisoners because he will not confess to the sex-offense for the enhancemen Judge Lewis T. Babcock reopened this case stating; "the plaintiff's allegation against Warden designee are not legally frivolous. The eighth amendment is violated when prison officials act with deliberate indifference to a substantial risk of serious harm to an inmate. see Farmer v Brennan 511 US 825,828 (1994) Allen alleged in the Amended complaint that the warden Designee intentionally placed him in a living unit with Security Threat Group (STG) inmates on August 12, 2011 and by a different (STG) inmate April 25, 2012 and by a (STG) prisoner caused him to suffer broken rib and a lost tooth. Allen further alleges that he , has been told that he will be protected from (STG) prisoners if he participates in sex-offender-treatment and it is common knowledge that sex-offenders are attacked, beaten, extorted, and killed by (STG) prisoners." see page (8) paragraph (2) of order granting in part motion for reconsideration.

ORIGINAL

No warden designee was permitted to be a defendant by Magistrate Watanabe. Magistrate Watanabe claimed the eighth amendment violations were innocent. In case No. 08-cv-02506 Allen showed that placing Allen with (STG) prisoners was dangerous to Allen. On April 24, 2012 Allen was placed in a living unit pod concentrated with (STG) prisoners. On April 25, 2012 the plaintiff was assaulted. The plaintiff filed this action naming Rick Raemisch the executive director of C.D.O.C. for Injunctive relief as well as Governor Hickenlooper. see Nature of the case. Injunctive relief asked for is "A permanent restraining order requiring the defendants to not place the plaintiff in the same facility with (STG) prisoners." see request for relief section (i) of amended complaint. Magistrate Watanabe refused to allow any other defendant other then Warden Falk to be named. Magistrate Watanabe changed Allen's claim from these actions are a part of a "pattern of misconduct", to "plaintiff essentially argues that the continuing violation doctrine should be applied to his claims." Allen exhausted state remedies before he filed case No.08-cv-02506. And now CDOC employees are doing the same actions described in 08-cv-02506. In 08-cv-02506 the court did not address the merits of the case claiming that Zavaras had no knowledge. Warden Designee of Sterling Facility, Warden Falk, Rick Raemisch, and Governor Hickenlooper can not claim they have no knowledge of the threat of violence against the plaintiff.

**4. Statement of Issues and Arguments.** Accused sexual predators are at best, an extremely unpopular segment of the population. Strutton v. Meade, 2010 U.S. Dist. LEXIS 31944 Case No. 4:05CV02022 ERWUNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION (2010)

There is no longer a need to bring official-capacity actions against local government officials, for under Monell, supra, local government units can be sued directly for damages and injunctive or declaratory relief. See, e. g., Memphis Police Dept. v. Garner, 471 U.S. 1 (1985) (decided with Tennessee v. Garner) (damages action against municipality)..Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it, however, a State cannot be sued directly in its own name regardless of the relief sought. Alabama v. Pugh, 438 U.S. 781 (1978) (per curiam). Thus, implementation of state policy or custom may be reached in federal court only because official-capacity actions for prospective relief are not treated as actions against the State. See Ex parte Young, 209 U.S. 123 (1908); Ky. v. Graham, 473 U.S. 159(1985)

Specifically, Monell's policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions. See Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989) (noting municipal liability may attach where policy maker acquiesces in longstanding practice that constitutes "standard operating procedure" of local government); Green v. City of N.Y., 465 F.3d 65, 80 (2d Cir. 2006). Such a pattern, if sufficiently persistent or widespread as to acquire the force of law, [**20] may constitute a policy or custom within the meaning of Monell. 436 U.S. at 690-91; Jeffes v. Barnes, 208 F.3d 49, 61 (2d Cir. 2000); Turpin v. Mailet, 619 F.2d 196, 201 (2d Cir. 1990). see Reynolds v. Giuliani, 506 F.3d 183,192 (2007)Go to the description of this Headnote.a



federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96, 77 L. Ed. 2d 490, 103 S. Ct. 2890, n. 14 (1983).

Inmates retain at least some constitutional rights despite incarceration with the recognition that prison authorities are best equipped to make difficult decisions regarding prison administration. Washington v. Harper, 494 U.S. 210, (1990)
Federal courts sit not to supervise prisons but to enforce the constitutional rights of all "persons," including prisoners. Prison officials must be accorded latitude in the administration of prison affairs and prisoners necessarily are subject to appropriate rules and regulations. But persons in prison, like other individuals, have the right to petition the government for redress of grievances, which includes the access of prisoners to the courts for the purpose of presenting their complaints. Cruz v. Beto, 405 U.S. 319, (1972)

**a. First Issue. Claim of error and arguments:** claim 1 issue was not address at all by the district court. The plaintiff has a 5th amendment right not to confess. Claim 1 asks for injunctive relief only. Order the Parole-board to release the plaintiff to parole. See complaint section G. Request for relief (a)

(1) first argument; Under Colorado's statutory scheme, confinement and treatment are inextricably linked. Neither good behavior, parole policies, or other credits can affect the term of his sentence. Only successful therapy can shorten a prisoner's incarceration. Therapy is thus an inherent and integral element of the scheme, and its deprivation is clearly a grievous loss not emanating from the sentence. See Beebe v. Heil, 333 F. Supp. 2d 1011, 1017 (D. Colo. 2004) The plaintiff will serve a life sentence or receive treatment and parole. Therefore a life sentence is for the sole purpose of treatment.

C.R.S. 18-1.3-1001 states; "The general assembly hereby finds that the majority of persons who commit sex offenses, if incarcerated or supervised without treatment, will continue to present a danger to the public when released from incarceration and supervision. The general assembly also finds that keeping all sex offenders in lifetime incarceration imposes an unacceptably high cost in both state dollars and loss of human potential. The general assembly further finds that some sex offenders respond well to treatment and can function as safe, responsible, and contributing members of society, so long as they receive treatment and supervision. The general assembly therefore declares that a program under which sex offenders may receive treatment and supervision for the rest of their lives, if necessary, is necessary for the safety, health, and welfare of the state."

18 U.S.C.S. § 3582(a) instructs courts to recognize that imprisonment is not an appropriate means of promoting correction and rehabilitation. A common--and in context the most natural--definition of the word "recognize" is "to acknowledge or treat as valid," and a thing that is not "appropriate" is not "suitable or fitting for a particular purpose." Putting these two definitions together, § 3582(a) tells courts that they should acknowledge that imprisonment is not suitable for the purpose of promoting rehabilitation. And when should courts acknowledge this? Section 3582(a) answers: when determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, when determining the length of the term. So a court making these decisions should consider the specified rationales of punishment except for rehabilitation, which it should acknowledge

ORIGINAL

as an unsuitable justification for a prison term.  Tapia v. United States, 131 S. Ct. 2382 (2011)

Life in prison or confess to a crime is what the plaintiff faces. The state parole-board, Governor Hickenlooper, Rick Raemisch are demanding the plaintiff to undergo treatment that violates the plaintiff's fifth amendment right not to confess to a crime. This treatment is being done in prison. The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. Farmer v Brennan 511 US 825(1994)

This Colorado Revised Statute 18-1.3-1001 violates the plaintiff constitutional rights. C.R.S. 18-1.3-1001 presupposes that the plaintiff will commit a crime he has not yet even conceived. That is punishing the plaintiff for a crime he has not committed. " Also, the lower court properly refused the request for a voluntary manslaughter instruction because the crime was not committed in the heat of passion." United States v. Bordeaux, 980 F.2d 534  (1992) [state] government had no jurisdiction to prosecute plaintiff for crimes not committed  Ephraim v. Cauley CIVIL ACTION NO. 1:11-0107 UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA (2014)

"Appellant Taylor's sentences must likewise be vacated and his case remanded for resentencing. Taylor asserted during the sentencing hearing that the PSI included three convictions for crimes that he could not have committed because he was in prison at the time they occurred. The district court failed to comply with Rule 32(c)(3)(D) in omitting to state that the convictions would be disregarded or to make findings concerning the convictions." United States v. Garcia, 821 F.2d 1051(1987) no matter what evil may be planned, the crime has not been committed until an act has been done in furtherance thereof. De Mayo v. United States, 32 F.2d 472 (1929)crimes, if any, were not committed within its jurisdiction. United States ex rel. Karadzole v. Artukovic, 170 F. Supp. 383 (1959)

A fundamental requisite of criminal law is mens rea, or criminal intent. General criminal intent is an essential component of every malum in se crime. Under this concept, a crime is not committed if the mind of the person doing the act is innocent. Of course, a General Assembly may make the doing of an act or the omission to do some act a crime even in the absence of criminal intent. These crimes are called malum prohibitum. Whether a crime is malum in se or malum prohibitum is a matter of construction of the particular statute in view of its manifest purpose and design.  Letchworth v. Gay, 874 F. Supp. 107 (1995) punishing him for a crime he has not committed. Standard of Review Writs of habeas corpus "may be granted Parson v. Farley, Case No. 4:12 CV 467, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO, WESTERN DIVISION, 2012

Sense less then 5% of sex-offenders actually re-offend in the U.S. The statute has no basses for the conclusion and action taken. The statute did get one thing accurate " The general assembly also finds that keeping all sex offenders in lifetime incarceration imposes an unacceptably high cost in... loss of human potential."

To evaluate whether a prisoner's freedom has been restrained in a manner that imposes atypical [*12]  and significant hardship, the court must carefully examine the conditions of



the prisoner's confinement, Gaines v. Stenseng, 292 F.3d 1222, 1225-26 (10th Cir. 2002), including the duration and degree of plaintiff's restrictions as compared to other inmates. Perkins v. Kansas Dep't of Corr., 165 F.3d 803, 809 (10th Cir. 1999).

What constitutes a cruel and unusual punishment has not been exactly decided. It has been said that ordinarily the terms imply something inhuman and barbarous, torture and the like. The possibility that imprisonment in a state prison for a long term of years might be so disproportionate to the offense as to constitute a cruel and unusual punishment, has been conceded. Certain tyrannical acts of the English monarchs have also been used to illustrate the meaning of the clause and the extent of its prohibition. Weems v. U.S., 217 U.S. 349 (1910)

Second argument: Under Colorado's statutory scheme a criminal defendant charged with a sex-offense is sentenced to life in prison for class 6 threw class 1 felonies. This action enhances class 2 threw class 6 felonies without a jury verdict. The plaintiff was convicted under a class 3 felony max sentence is 12 years and 5 years parole.
"Due process held, in case involving New Jersey "hate crime" statute, to require that any fact that increased penalty for state crime beyond prescribed statutory maximum--other than fact of prior conviction--had to be submitted to jury and proven beyond reasonable doubt." Apprendi v New Jersey 530 U.S. 466 (2000);also see Bleakly v Washington 542 U.S.296 (2004); Booker v US 543 U.S. 220 (2005);Cunningham California 549 U.S. 270 (2007)

The state Legislators by statute created this violation of the plaintiff's constitutional rights protected by the fourteenth amendment  Sec. 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Sec. 5. The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article.
The district court did not allow this issue to be presented.

**b. Second Issue.** Claim 2  issue was not address at all by the district court. Sex-offender-treatment requirement violates the plaintiff's 5th amendment right. The plaintiff is denied evaluation, and treatment because he will not confess. Plaintiff only asks for injunctive and declaratory relief in this issue. See complaint section G. Request for relief (b) [injunctive relief; order that the (S.T.O.M.P.)(sex-offender-treatment-and-monitoring-program) remove the non-compliance from the plaintiff's record.],and (c)[declaratory relief; declare  that (C.S.M.B.)(Colorado-sex-offender-management-board) has no authority to demand a confession for treatment.]

Under Colorado law, a sex offender is required as part of his or her sentence to undergo appropriate treatment. Colo. Rev. Stat. §§ 16-11.7-106 and 18-1.3-1004(3). The sex offender is further required to undergo an evaluation to determine what kind of treatment would be appropriate for him or her. Colo. Rev. Stat. §§ 16-11.7-104, 16-11.7-105. For a sex offender to be eligible for release on parole, the parole board must consider whether

ORIGINAL

the sex offender has successfully progressed in treatment. Colo. Rev. Stat. § 18-1.3-1006(1)(a). Thus, participation in a treatment program is an absolute prerequisite for release on parole. See Beebe v. Heil, 333 F. Supp. 2d 1011, 1017 (D. Colo. 2004)
A Fed. R. Civ. P. 12(c) motion for judgment on the pleadings is reviewed under the standard of review applicable to a Fed. R. Civ. P. 12(b)(6) motion to dismiss. Thus, dismissal is appropriate only if it appears that a plaintiff can prove no set of facts under which he would be entitled to relief. See Beebe v. Heil, 333 F. Supp. 2d 1011, 1017 (D. Colo. 2004)

In reviewing a motion to dismiss, a court must accept all the well-pleaded allegations of the complaint as true and construe them in the light most favorable to a plaintiff. See Beebe v. Heil, 333 F. Supp. 2d 1011, 1017 (D. Colo. 2004)

The dismissal of a complaint is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading, but also to protect the interests of justice. See Beebe v. Heil, 333 F. Supp. 2d 1011, 1017 (D. Colo. 2004)

Challenges to the very fact or duration of a prisoner's physical confinement itself, or actions by prisoners seeking immediate release or a speedier release from confinement must be brought under the habeas statute. However, where a district court determines that a plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed as a 42 U.S.C.S. § 1983 action, in the absence of some other bar to the suit. See Beebe v. Heil, 333 F. Supp. 2d 1011, 1017 (D. Colo. 2004)

The Due Process Clause applies when government action deprives a person of liberty or property; accordingly, when there is a claimed denial of due process, a court must consider the nature of the individual's claimed interest. This means that to obtain a protect able right, a person must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. See Beebe v. Heil, 333 F. Supp. 2d 1011, 1017 (D. Colo. 2004)

A court must construe a pro se amended complaint liberally and under a less stringent standard than that applied to pleadings submitted by an attorney. See Beebe v. Heil, 333 F. Supp. 2d 1011, 1017 (D. Colo. 2004)

A prisoner is not wholly stripped of constitutional protections when he is imprisoned for a crime. Prisoners, thus, retain some rights under the Due Process Clause. These rights, however, are subject to restrictions imposed by the nature of the regime to which they have been lawfully committed. See Beebe v. Heil, 333 F. Supp. 2d 1011, 1017 (D. Colo. 2004)

Where a right may not otherwise have existed, a state may create prisoner rights through the use of mandatory statutory language. Where such a right is created, a prisoner is entitled to some minimal due process before he is arbitrarily deprived of it. See Beebe v. Heil, 333 F. Supp. 2d 1011, 1017 (D. Colo. 2004)

While Colorado's Sex Offender Lifetime Supervision Act does vest some degree of discretion in the Colorado Department of Corrections, that discretion is not as to whether a sex offender should receive treatment; rather, it is as to what kind of treatment is appropriate for the offender. Colo. Rev. Stat. § 16-11.7-105.See Beebe v. Heil, 333 F. Supp. 2d 1011, 1017 (D. Colo. 2004)

Under Colorado's statutory scheme, confinement and treatment are inextricably linked. Neither good behavior, parole policies, or other credits can affect the term of his sentence. Only successful therapy can shorten a prisoner's incarceration. Therapy is thus an inherent and integral element of the scheme, and its deprivation is clearly a grievous loss not emanating from the sentence. See Beebe v. Heil, 333 F. Supp. 2d 1011, 1017 (D. Colo. 2004)

A court determining whether a liberty interest created by state law warrants due process protection must assess the nature of the interest and whether a plaintiff's being deprived of it has caused the inmate to suffer a grievous loss of liberty retained even after imprisonment. Such state-created liberty interests are generally limited to freedom from restraint which imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. However, a major change in a prisoner's conditions of confinement may amount to a grievous loss to the prisoner. See Beebe v. Heil, 333 F. Supp. 2d 1011, 1017 (D. Colo. 2004)

Colorado has created a scheme in which a sex offender is required to undergo treatment and in which the Colorado Department of Corrections lacks discretion to withhold treatment. Colo. Rev. Stat. §§ 16-11.7-105, 18-1.3.1004(3). The withholding of treatment, then, would work a major change in the condition of a prisoner's confinement, since his status would change from eligible to be considered for parole to ineligible to be considered for parole. Such a change would, without doubt, have a serious impact on the prisoner's morale, outlook, hope for the future, and motivation to pursue rehabilitation. As such, there can be no serious dispute that the deprivation of treatment amounts to a grievous loss to the inmate. See Beebe v. Heil, 333 F. Supp. 2d 1011, 1017 (D. Colo. 2004)

To evaluate whether a prisoner's freedom has been restrained in a manner that imposes atypical and significant hardship, a court must carefully examine the conditions of the prisoner's confinement, including the duration and degree of the prisoner's restrictions as compared with other inmates. See Beebe v. Heil, 333 F. Supp. 2d 1011, 1017 (D. Colo. 2004)

The Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them. In evaluating a prisoner's substantive due process claim, a court must consider whether defendants have been deliberately indifferent to a liberty interest and deprived the prisoner of that interest in such a way that the behavior of the governmental officers is so egregious, so outrageous that it may fairly be said to shock the contemporary conscience. See Beebe v. Heil, 333 F. Supp. 2d 1011, 1017 (D. Colo. 2004)

Liability for deliberate indifference to inmate welfare rests upon the luxury enjoyed by prison officials of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations. When such extended opportunities to do better are teamed with protracted failure even to care, indifference is truly shocking. See Beebe v. Heil, 333 F. Supp. 2d 1011, 1017 (D. Colo. 2004)

Where the authorities were not merely supposed to reflect and care, but in addition were to carry out a prescribed course of treatment, the allegation that the prison officials who

failed to institute a practice or procedure to provide due process to the prisoner before his exclusion from a treatment program were deliberately indifferent must be evaluated to determine whether their behavior shocks the conscience. See Beebe v. Heil, 333 F. Supp. 2d 1011, 1017 (D. Colo. 2004)

Under the Colorado created scheme in which a sex offender is required to undergo treatment and in which the Colorado Department of Corrections lacks discretion to withhold treatment. Here in this case Colorado Department of Corrections has withhold evaluation and treatment based on a misguided demand for a confession, not needed for treatment. This confession violates the plaintiff's 5th amendment rights. Magistrates Recommendation for dismissal judgment should have been rejected. Where a plaintiff, appearing pro se, files a timely petition for rehearing, and where the nature of the matter is dispositive, a court must review de novo those specified proposed findings or recommendations to which an objection is made. Fed. R. Civ. P. 72(b); 28 U.S.C.S. § 636(b)(1).

The district court did not allow this issue to be presented.

**c. Third Issue.** The plaintiff has a 5th amendment right not to confess. Plaintiff is being placed with Security Threat Groups (STG) who assault, extort, and attempted to kill the plaintiff because the plaintiff refuses to confess to a crime. Look at case 08-cv-02506-ZLW-BNB the plaintiff was forced to fight three times inside 5 months. Then moved to two facilities where he was threatened with violence in each of those facilities by (STG) prisoners, moved to Arkansas Valley facility where Lt Stranger offered to protect the plaintiff from (STG) prisoners, but only if he confesses to a crime. The plaintiff refuses and his officers tried to physically force the plaintiff in a cell with a (STG) shot-caller, when they could not succeed they assaulted the plaintiff. See case no.,09-cv-02325-CMA-BNB. Then the plaintiff was moved to Sterling Correctional facility, where within two weeks the threats to the plaintiff and the first theft of the plaintiff's property began. Guards refused to investigate. The plaintiff was then threatened and attempted extortion. When the plaintiff did not pay extortion the plaintiff was threatened with violence. Then the plaintiff testified that he was living under a content threat of violence. See transcripts from case 08-cv-02506-ZLW-BNB. Then the warden designee of sterling went out of his way to place the plaintiff with (STG) prisoners witch caused three more assaults.

 **This issue was dismissed by the magistrate claiming;**

(1) "they are so general that they encompass a wide swath of conduct, much of it innocent...facts in support of the pleaded claims is insufficient"

(2)"Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion [*10] and response.

(3)a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact empowers a court to dismiss a Complaint for [*6] "lack of jurisdiction over the subject matter." .

(4)Plaintiff's § 1983 claim is governed by the two-year statute of limitations contained in § 13-80-102, C.R.S. See Workman v. Jordan, 32 F.3d 475, 482 (10th Cir. 1994); Merrigan v. Affiliated Bankshares of Colo., Inc., 775 F. Supp. 1408, 1411-12 (D. Colo.

ORIGINAL

1991)...  in response, plaintiff essentially argues that the continuing violation doctrine should be applied to his claims

(5)Defendant asserts that there was no violation of the plaintiff's Eighth Amendment rights...  "

(6)Defendant correctly assert that to the extent the plaintiff is suing him in his official capacity for damages,

(7)Furthermore, plaintiff is not an [*13] inexperienced litigator, as evidenced by the many previous civil actions he has brought in this court, including at least two others which also involved Eighth Amendment claims concerning his being housed with gang members. See, e.g., Civil Action Nos. 08-cv-02506-ZLW-BNB (Docket No. 3); 09-cv-02325-CMA-BNB...Nevertheless, here he failed to bring his claims concerning the first three incidents in a timely manner.

(8)The court finds that plaintiff has not shown an Eighth Amendment claim against defendant for deliberate indifference [*23] to an objectively serious risk to his safety. Plaintiff alleges that over a period of about five years, he had isolated conflicts with four individuals.

(9)Plaintiff does not allege that these individuals or the incidents were connected, nor does he allege that he had any pre-existing concerns regarding any of these four individuals other than having a general concern about potential violence by STG inmates.

(10)Moreover, he does not allege that he ever reported any concerns about these individuals or specific STG groups to the defendant or that defendant was otherwise apprised of any substantial risk of serious harm to plaintiff to which defendant was subsequently deliberately indifferent.

(11)). "This Exhibit has no relevance to the issue of whether plaintiff exhausted his administrative remedies with respect to his claim of having been assaulted in April 2012, almost three years after Exhibit I was submitted." "Here, defendant has shown that despite plaintiff's familiarity with the grievance process, plaintiff failed to avail himself of it with respect to his claim that defendant failed to protect him from an incident which allegedly occurred on or about April 25, 2012."

### Arguments against these claims

(1)Magistrate's determination of fact is false. The defendant's place the plaintiff with (STG) prisoners for the sole purpose of forcing a confession to a crime. See amended complaint pages3,and 6.defendant's refuse to protect the plaintiff from (STG) prisoners. See amended complaint pages3,and 6, Exhibit (I),(O), and Allen v Zavaras 09-cv-02325-ZLW-BNB,Allen v Zavaras 08-cv-02506-ZLW-BNB, both cases dismissed without addressing the merits.

(2) Summary judgment is not appropriate when the court conclusions of fact are false.

(3)Defendant's submitted an Affidavit by Mr Hollenbeck in the affidavit it stated; the plaintiff did not file a grievance in this matter. Exhibit(O) is a copy of the grievance filed in this matter. The court can not base its decision on a false affidavits . "The indictment charged the defendant, John Bailey, with perjury and false swearing, upon the following affidavit, made by him before a justice of the peace of the commonwealth of Kentucky." United States v. Bailey, 34 U.S. 238 (1835)United States v. Nelson, 199 F. 464 (1912)

ORIGINAL

(4)This is a false claim. Plaintiff claims that this is a claim of a Pattern of misconduct dating back to 2008 and involving cases Allen v Zavaras 09-cv-02325-ZLW-BNB, Allen v Zavaras 08-cv-02506-ZLW-BNB Notice ... may be implied where either (1) "the failure to train is so likely to result in a constitutional violation that the need for training is patently obvious," or (2) "a pattern of misconduct indicates that the [governmental entity]'s responses to a regularly recurring situation are insufficient to protect the [claimant]'s constitutional rights." Id. (quoting P.H. v. Sch. Dist. of Kansas City, 265 F.3d 653, 660 (2001) see Jacob v. City of Osceola, Case No. 05-0323-CV-W-NKL As demonstrated by the plaintiff continuing prisoner complaints on this issue, the defendant actions are insufficient to protect the plaintiff.

(5) If there is no 8th amend violation then how did the plaintiff get his scars and his broken rib, and lost teeth? Lewis T. Babcock reopened this case stating; "the plaintiff's allegation against Warden designee are not legally frivolous. The eighth amendment is violated when prison officials act with deliberate indifference to a substantial risk of serious harm to an inmate. see Farmer v Brennan 511 US 825,828(1994) Allen alleged in the Amended complaint that the warden Designee intentionally placed him in a living unit with Security Threat Group (STG) inmates on August 12, 2011 and by a different (STG) inmate April 25, 2012 and by a (STG) prisoner caused him to suffer broken rib and a lost tooth. Allen further alleges that he , has been told that he will be protected from (STG) prisoners if he participates in sex-offender-treatment and it is common knowledge that sex-offenders are attacked, beaten, extorted, and killed by (STG) prisoners." see page (8) paragraph (2) of order granting in part motion for reconsideration.

(6) Plaintiff did not make a clime for damages under Defendant's official capacity, plaintiff makes a claim for injunction under state-employee Official Capacity. citeing, Ky. v. Graham, 473 U.S. 159 (1985) stating; ( Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent....As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself....On the merits, to establish personal liability in a 42 U.S.C.S. § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a moving force behind the deprivation; thus, in an official-capacity suit the entity's policy or custom must have played a part in the violation of federal law....When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, such as objectively reasonable reliance on existing law. In an official-capacity action, these defenses are unavailable. The only immunities that can be claimed in an official-capacity

ORIGINAL

action are forms of sovereign immunity that the entity, qua entity, may possess, such as U.S. Const. amend. XI....A local government may not be sued under 42 U.S.C.S. § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983....Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it, however, a State cannot be sued directly in its own name regardless of the relief sought. Thus, implementation of state policy or custom may be reached in federal court only because official-capacity actions for prospective relief are not treated as actions against the State.)see amended complaint page3

(7)The  plaintiff is an  inexperienced litigator, as evidenced by the many previous civil actions he has brought in this court, including at least three others which also involved Eighth Amendment claims concerning his being housed with gang members. See, e.g., Civil Action Nos. 08-cv-02506-ZLW-BNB,09-cv-02325-CMA-BNB and has yet to have any case adjudicated on the merits.

 (8) The court magistrate refused to allow the plaintiff to name the proper defendant (Warden Designee of sterling correctional facility). See transcripts from hearing dated October 6, 2014. The plaintiff alleges after the plaintiff informed the court that he was living in a constant threat of violence, over a period of 2 years 4 months the plaintiff was threatened and assaulted directly 5 times. See amended complaint page 3, and 6.

 (9)Plaintiff does allege that the Warden Designee of sterling correctional facility placed the plaintiff with (STG) prisoners for the sole purpose of forcing a confession. See amended complaint page 3, and 6. he does allege that he had any pre-existing concerns regarding any of these individuals other than having a general concern about potential violence by STG inmates. See grievances under Exhibit (I),and (O),and Civil Action Nos. 08-cv-02506-ZLW-BNB,09-cv-02325-CMA-BNB

 (10)Moreover, he has allege that he reported concerns about (STG) groups to the defendant and that defendant was otherwise apprised of any substantial risk of serious harm to plaintiff to which defendant was subsequently deliberately indifferent. See amended complaint page 3, and 6. also see grievances under Exhibit (I),and (O),and Civil Action Nos. 08-cv-02506-ZLW-BNB,09-cv-02325-CMA-BNB

(11) Look at case ,09-cv-02325-CMA-BNB the plaintiff was placed with (STG) shot-caller the plaintiff refused to house with him stating: He and another prisoner threatened him and still the four official's attempted to physically force the plaintiff into the cell with the (STG) shot-caller. Lt Stranger offered to protect the plaintiff from (STG) prisoners only if the plaintiff confesses to a crime. The court notes about this that plaintiff's Exhibit I referenced by plaintiff in his Response is a Grievance Form dated June 26, 2009. That grievance concerns a claim by plaintiff that he was being forced into a violent situation by four CDOC employees, what the court left out was the violent situation. As stated in (grievance) Exhibit I;

> " I was sent to this facility 6/15/09. I was moved from in cell house from (6) to cell house one (B) pod room (8) on 6/18/09. I am classified as a sex-offender the inmate in cell house one (B) pod room(8) is a documented gang member and he told me I was not moving in his cell. This facility will separate Blacks, whites, and Hispanic, but they wont sex-offenders , and gang members. The gang members



made it clear to me as well as the guards at this facility that there will be violence if I were in his cell. The moment the your guard attempted to physically force me in that cell with my hands cuffed behind my back they became "deliberately indifferent" to my health and well being any injures that I suffered as the cause of there attempt to force my demise they are liable and Lt. Stranger appeared to be happy with there actions with makes him liable as well. This is an 8th amend. Violation of my constitutional rights. It is cruel and unusual punishment to hold convicted criminals in unsafe conditions. See Halling v McKinney 509 US 25 (1993)government official in supervisory position will be deemed to have sufficient personal responsibility for claimed constitutional violations to be held liable under§ 1983 if he directed the conduct causing the constitutional violation of if it accrued with his knowledge of consent. See Chavez v Illinois." (251 F.3d 612,2000)

Witch is exactly the claim here CDOC employees placed the plaintiff with (STG) prisoners and force him to fight for his life. 42 U.S.C.S. § 1997e(a) does not say how specific a prisoner's administrative grievances must be, and the U.S. Court of Appeals for the Fifth Circuit has so far given relatively little guidance regarding what a prisoner must say in his grievances to properly exhaust his claims. As a general matter, courts typically use a standard according to which a grievance should give prison officials fair notice of the problem that will form the basis of the prisoner's suit. Johnson v. Johnson, 385 F.3d 503 (2004)

Exhibit I demonstrates CDOC employees state of mind. As for Exhibit O the district court refused to acknowledge it.

The primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation. But, at the same time, the grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit, and for many types of problems this will often require, as a practical matter, that the prisoner's grievance identify individuals who are connected with the problem. Johnson v. Johnson, 385 F.3d 503 (2004)

As a general matter, there is authority from several courts to the effect that a prisoner, who is of course typically uncounseled, need not present legal theories in his grievances. Johnson v. Johnson, 385 F.3d 503 (2004)

Prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Gratuitously allowing the beating or rape of one prisoner by another serves no legitimate phrenological objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society. Johnson v. Johnson, 385 F.3d 503 (2004)

.  As a general matter, there is authority from several courts to the effect that a prisoner, who is of course typically uncounseled, need not present legal theories in his grievances. Johnson v. Johnson, 385 F.3d 503 (2004)

Even though an inmate need not present a full-fledged legal theory in his grievance, his grievances must alert prison officials to a problem and give them an opportunity to address it. Johnson v. Johnson, 385 F.3d 503 (2004)

When inmates have filed a grievance regarding a prison policy, they need not file grievances regarding subsequent incidents in which the policy is applied. Johnson v. Johnson, 385 F.3d 503 (2004)



The court refused to read the PLRA "so narrowly as to…permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances. Id. (quotation omitted). See Also Goodman v. Carter, No. 00-948, 2001 U.S. Dist. LEXIS 9213, at *10 (N.D. Ill., June 29, 2001); Whitmore v. Officer Hurley, No. 00-7879, 2002 U.S. Dist. LEXIS 16352, at *14 (N.D. Ill., Aug. 29, 2002). Genise v. Sheahan, 2003 U.S. Dist. LEXIS 22867  No. 03 C 1768 UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

The plaintiff alerted prison officials to the problem. Prison officials sated "The other item is not a grievable issue." see Exhibit O

**Claims made by state attorney general;**

(1) plaintiff failed to exhaust his administrative remedies and his claim should thus be dismissed pursuant to the Prison Litigation Reform Act ("PLRA"),

(2) his claim is largely time-barred,

(3) Falk is entitled to Eleventh Amendment immunity,

(4) plaintiff fails to allege personal participation on behalf of Falk,

(5) plaintiff fails to state an Eighth Amendment claim;

(6) Falk is entitled to qualified immunity, and

(7) plaintiff fails to state a claim for damages. The only argument alternatively brought pursuant to Fed. R. Civ. P. 56 is number 1, the non-exhaustion argument.

### Arguments to attorney generals claims

(1)  The court should refuse to read the PLRA "so narrowly as to permit [prison officials] to exploit the exhaustion requirement through indefinite delay by requiring the prisoner to file a grievance every time the defendant forces to plaintiff to defend himself from (STG) prisoners. See Johnson v. Johnson, 385 F.3d 503 (2004)

(2) plaintiff has demonstrated that the defendant's continuing practice of placing the plaintiff with (STG) prisoners is a pattern of misconduct.  P.H. v. Sch. Dist. of Kansas City, 265 F.3d 653, 660 (2001) claim is not time bared as long as the defendants keeps placing the plaintiff with (STG) prisoners.

(3) Plaintiff did not make a clime for damages under Defendant's official capacity, plaintiff makes a claim for injunction under state-employee Official Capacity. citeing, Ky. v. Graham, 473 U.S. 159 (1985)

(4) An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under 42 U.S.C.S. § 1983 Chavez v. Ill. State Police, 251 F.3d 612 (2000)

(5)Prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.  Johnson v. Johnson, 385 F.3d 503  (2004) The Federal Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones; the treatment which prisoners receive in prison, and the conditions under which they are confined, are subject to scrutiny under the Constitution's Eighth



Amendment. see Farmer v Brennan 511 US 825,828(1994)

(6) The doctrine of respondeat superior can not be used to hold a supervisor liable for conduct of a subordinate that violates a plaintiff's constitutional rights. Supervisory liability will be found, however, if the supervisor, with knowledge of the subordinate's conduct, approves of the conduct and the basis for it. Chavez v. Ill. State Police, 251 F.3d 612 (2000) and because these actions of placing the plaintiff with (STG) prisoners is to force the plaintiff to confess and Falk acquiesced to the actions, Falk is liable.

(7)Plaintiff claims he has new scares on his face, a broken rib, and lost tooth in what world is this not damages.

**actual issue in the complaint**

Plaintiff is being placed with Security Threat Groups (STG) who assault, extort, and attempted to kill the plaintiff because the plaintiff refuses to confess to a crime. As deference demonstrates in Mr Hollenbeck's affidavit defendant's and the entire CDOC refuse to acknowledge that (STG) prisoners extort, attack, and kill prisoners who are labeled as sex-offenders. As demonstrated by exhibit (k) prisoners are being killed because of placement. As demonstrated by Mr Rice's Affidavit he has witnessed the alliance between CDOC employees and (STG) prisoners to promote valance. As demonstrated by exhibit (D) and, (E), CDOC has a financial insensitive to promote extortion. Here is case law to support this issue.

Plaintiff claims that the conditions of his confinement in Living [**14] Unit II violated his Eighth Amendment right to be free from cruel and unusual punishment. Conditions of confinement fall within the Eighth Amendment because they are part of the penalty that criminal offenders pay for their offenses. See Whitley v. Albers, 475 U.S. 312, 318-19, 89 L. Ed. 2d 251, 106 S. Ct. 1078 (1986)

Although prison officials have broad administrative and discretionary authority to manage and control prisons, Bailey v. Shillinger, 828 F.2d 651, 653 (10th Cir. 1987), they must provide humane conditions of confinement guided by "contemporary standards of decency." Estelle v. Gamble, 429 U.S. 97, 103, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976).

"[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970, 1984, 128 L. Ed. 2d 811 (1994).

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to the scrutiny of the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (citation omitted). The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. Amed. VIII. Certain conditions of confinement, if they inflict pain unnecessarily and wantonly, may constitute cruel and unusual punishment under the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed. 2D 251 (1986).

"An inmate making a direct challenge to conditions of confinement under the 8th Amendment, must show that, judged by contemporary standards of decency, the conditions either involve the wanton and unnecessary infliction of pain, that they are grossly disproportionate to the severity of the crime, or that they entail serious deprivation of basic

**Opening Brief and Application for a Certificate of Appealability**          **page 19**



human needs." Georgacarakos v. Wiley, 2010 U.S. Dist. LEXIS 30412, 2010 WL 1291833, at *11 (D. Colo. Mar. 30, 2010) (internal quotation marks and citation omitted). "Prison officials must . [*22] . . take reasonable measures to guarantee those inmates' safety." Id. (citation omitted). "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer, 511 U.S. at 833 (internal quotation marks and citation omitted). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 834.

"An Eighth Amendment claim includes both an objective component, whether the deprivation of a basic human need is sufficiently serious, and a subjective component, whether the officials acted with a sufficiently culpable state of mind." Matthews v. Wiley, 744 F. Supp. 2d 1159, 1176 (D. Colo. 2010). The objective component addresses whether plaintiff is "incarcerated under conditions posing a substantial risk of serious harm," Farmer, 511 U.S. at 834, which includes "official conduct that is sure or very likely to cause serious injury at the hands of other inmates." Benefield v. McDowall, 241 F.3d 1267, 1272 (10th Cir. 2001) (internal quotation marks and citation omitted.). "The subjective component follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." Matthews, 744 F. Supp. 2d at 1176 (quotations omitted).

To succeed on an Eighth Amendment failure to protect claim, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm and that the prison officials acted with deliberate indifference to the inmate's safety. An official is deliberately indifferent when he knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. The official's knowledge of the risk can be proven through circumstantial evidence, such as by showing that the risk was so obvious that the official must have known about it. Finally, there is no liability if the official responded reasonably to the risk, even if the harm ultimately was not averted.  Johnson v. Johnson, 385 F.3d 503  (2004)

Look at case ,09-cv-02325-CMA-BNB the plaintiff was placed with (STG) prisoner the plaintiff refused to house with him stating he another prisoner threatened him and still the four official's attempted to physically force the plaintiff into the cell with the (STG) prisoner. Lt Stranger offered to protect the plaintiff from (STG) prisoners only if the plaintiff confesses. The court notes about this that plaintiff's Exhibit I referenced by plaintiff in his Response is a Grievance Form dated June 26, 2009. That grievance concerns a claim by plaintiff that he was being forced into a violent situation by four CDOC employees, and he requested therein that he be removed from that violent facility and be given an apology by the four officers who assaulted him. (Docket No. 32 at 16) How many times does the plaintiff  have to be beaten or robed before a court will take notice. The plaintiff has suffered in theses last three assaults two scars on his face witch involved nine stitches, one broken rib, and a lost tooth. In one of these assaults the prisoner tried to kill the plaintiff, he was caught outside his aria, he had a weapon, and yet he was not charged with a crime.

ORIGINAL

An Eighth Amendment violation exists "only when the alleged deprivation is 'objectively, "sufficiently serious,"' and the prison official acts with '"deliberate indifference" to inmate health or safety.'" Adkins v. Rodriguez, 59 F.3d 1034, 1037 (10th Cir. 1995) (citations omitted). Plaintiff specifically alleged that prison officials retaliated against him by placing the plaintiff with (STG) prisoners for the sole purpose of forcing a confession to a crime. He asserts this violated his right to be free from cruel and unusual punishment because it caused his gums to bleed and recede and tooth decay that eventually had to be treated by a dentist. Plaintiff has raised a genuine issue of material fact in regard to whether prison officials' alleged denial of hygienic items caused plaintiff serious harm. Thus, we reverse and remand on whether prison officials caused plaintiff serious harm by failing to satisfy his basic hygienic needs. A prisoner has a protected liberty interest in avoiding harsh conditions of confinement to the extent that they impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life, as well as in avoiding disciplinary actions that inevitably affect the duration of his sentence. See Nichols v. Trustmark Ins. Co. (Mut.) 1 F. Supp. 2d 689 (1997)
It is a precept of justice that punishment for crime should be graduated and proportioned to offense. Weems v. U.S., 217 U.S. 349 (1910)

    The question before this court, even within its equitable jurisdiction, is not what is best for all concerned but simply what are plaintiffs entitled to have as a matter of constitutional law. Swann v. Charlotte-Mecklenburg Board of Education, 243 F. Supp. 667 (1965)
To be entitled to injunctive relief, a plaintiff must show that he is in imminent danger of harm. Robinson v. Chicago, 868 F.2d 959, 960 (7th Cir. 1989)(citing Los Angeles v. Lyons, 461 U.S. 95, 75 L. Ed. 2d 675, 103 S. Ct. 1660 (1983)) The defense provided the proof in Mr Hollenbeck's Affidavit. The defendants will keep placing the plaintiff with (STG) prisoners as long as the courts will do nothing to stop them.

    As for monetary relief, only current detainees who have suffered constitutional injury are entitled to monetary damages. Los Angeles v. Heller, 475 U.S. 796, 799, 89 L. Ed. 2d 806, 106 S. Ct. 1571 (1986).

    Under the Prisoners Litigation Reform Act ("PLRA"), you must dismiss any claims that "seek monetary relief from a defendant immune from such relief." 42 U.S.C.S. § 1997e(c) (1). Thus, the current detainees' right to sue for monetary relief depends on whether they have properly alleged that the Defendant has, through unconstitutional practices and/or policies violated, their due process rights. You should find that Plaintiffs' claims of punishment create a proper basis for this suit and that monetary damages may be sought by the plaintiff.

    The court must liberally construe the pro se  litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002)(quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). See also Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688). Notwithstanding this liberality, pro se litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. See, e.g.,

ORIGINAL

Taylor v. Books A Million, Inc., 296 F.3d 376, 378, (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 1202 (10th Cir. 1996).

The plaintiff has scares on his face because the defendants placed the plaintiff in harms way to get him to confess to a crime. Fact is most states would not allow sex-offenders to be housed in general population because of the valiance (STG) prisoners perpetrate against them CDOC employees use (STG) prisoners to force confessions.

**5.     Relief Requested.**  Request this court remand this case back to the district court for a proper trial on the merits of this case.


**FILL OUT AND SIGN EACH OF THE FOLLOWING TWO SECTIONS**

========================================================================

I affirm under the penalty for perjury that I placed this Appellant's Combined Opening Brief and Application for a Certificate of Appealability with first-class postage prepaid in the prison mail system or, if I was not incarcerated, in the United States Mail, addressed to the Clerk of the U.S. Court of Appeals for the Tenth Circuit, 1823 Stout St., Denver, CO 80257. on the following date:

_April___ __13__ __2015___     _____
  month      day    year                    signature

========================================================================

I certify that the total number of pages I am submitting as my Appellant's Combined Opening Brief and Application for a Certificate of Appealability is 30 pages or less or alternatively, if the total number of pages exceeds 30, I certify that I have counted the number of words and the total is___22_____ , which is less than 14,000. I understand that if my Appellant's Combined Opening Brief and Application for a Certificate of Appealability exceeds 14,000 words, my brief may be stricken and the appeal dismissed.

_Aprial__ __13__ __2015___     _____
  Month      day    year                    signature